Shannon SCIPIONE, Plaintiff,

v.

**ADVANCE STORES COMPANY, INC., et al., Defendants.**

No. 8:12–cv–687–T–24AEP.

United States District Court, M.D. Florida, Tampa Division.

Oct. 8, 2013.

Douglas E. Polk, Jr., John Bales Attorneys, St. Petersburg, FL, for Plaintiff.

David J. Walz, Carlton Fields, PA, Tampa, FL, Emmet J. Schwartzman, Michele Aimee Vargas, Carlton Fields, PA, Miami, FL, for Defendants.

## *ORDER*

ANTHONY E. PORCELLI, United States Magistrate Judge.

Before the Court is Defendant Advance Stores Company, Inc.'s Motion to Impose Sanctions on Plaintiff for Committing Fraud on the Court and Discovery Violations ("Motion"). (Dkt. No. 42.) Plaintiff filed a Response (Dkt. No. 55) in opposition to the Motion, and Defendant filed a Reply (Dkt. No. 59). On May 28, 2013, the Court conducted an evidentiary hearing on the matter. Defendant asserts that Plaintiff set in motion an unconscionable scheme calculated to interfere with the Court's ability to impartially adjudicate this matter by hiding from Defendant evidence of pre-existing medical conditions, prior injuries, medical care, and post-accident injuries. (Dkt. No. 42 at 1.) As such, Defendant asserts that, pursuant to the Court's inherent authority or alternatively pursuant to Fed.R.Civ.P. 37(b)(2) and (c)(1), Plaintiff's case should be dismissed with prejudice. (*Id.* at 19.) In response, Plaintiff in essence argues that although she did not provide adequate discovery responses, she never intended to mislead Defendant or defraud the Court. (Dkt. No. 55 at 2.) For the reasons that follow, I find that Plaintiff recklessly acted in bad faith during the discovery phase of this matter, warranting monetary and other sanctions.

### I. Background

Plaintiff initiated this action following a purported slip-and-fall at an Advance Auto Parts Store. (Dkt. No. 2.) Plaintiff alleges that on February 23, 2011, she slipped and fell in "an oily substance on the pavement" in the parking lot at Defendant's auto parts

store at Park Boulevard, Pinellas Park, Florida, and, as a result, seeks damages related to an alleged injury of her left knee. (*Id.*) On October 13, 2012, the Court entered a Case Management and Scheduling Order (Dkt. No. 26), in which the Court set a discovery deadline of February 1, 2013, and a dispositive motion deadline of March 1, 2013. During the discovery phase of this case, the following relevant events occurred: (1) on September 18, 2012, Defendant served Plaintiff with the 1st Set of Interrogatories; (2) on October 10, 2012, Plaintiff provided Defendant with a Supplemental Rule 26 Initial Disclosure (Dkt. No. 42, Ex. No. 2); (3) on October 19, 2012, Plaintiff provided Defendant with Responses to the 1st Set of Interrogatories (Dkt. No. 42, Ex. No. 1); (4) on November 14, 2012, Plaintiff provided Defendant with Supplemental Responses to the 1st Set of Interrogatories (Dkt. No. 42, Ex. No. 3); (5) on November 15, 2012, Plaintiff was deposed (Defendant's Hearing Ex. No. 4); (6) on December 13, 2012, Defendant served Plaintiff with the 2nd Set of Interrogatories (Dkt. No. 42, Ex. No. 5); (7) on February 1, 2012, Defendant filed a Motion to Compel Discovery Responses (Dkt. No. 34); and (8) after conducting a hearing on February 20, 2013, the Court entered an Order (Dkt. No. 40) granting Defendant's Motion to Compel and directing Plaintiff to identify additional medical providers as requested by Defendant.

## II. Findings of Fact

Despite multiple efforts by Defendant to obtain relevant discovery, Plaintiff failed to *appropriately* provide responsive information. Significantly, given that Plaintiff alleged in this case an injury to her left knee, Plaintiff failed to provide responsive information about prior- and post-incident medical

treatment on her left knee related to four events: (1) a September 25, 2008 examination of Plaintiff by Dr. Chirag Patel, M.D., which involved X-rays on Plaintiff's left knee; (2) a workers' compensation claim related to a fall at work in October 2009, which required an MRI of Plaintiff's left knee and some type of occupational therapy; (3) a fall at Plaintiff's home in August 2011, which required an MRI of Plaintiff's left knee, as well as surgery on Plaintiff's left knee by Dr. Wendell Bulmer, D.O.; and (4) Dr. Bulmer opining, upon review of another MRI in April 2012, that a lesion on Plaintiff's left knee represented a new injury, resulting in further treatment by Dr. Gary Levine, D.O. and Dr. Katz [1] (collectively "four events"). Indeed, information about the four events should have been provided by Plaintiff in response to Interrogatory No. 11 of Defendant's 1st Set of Interrogatories, served on September 18, 2012, which requested the following:

> List the names and business addresses of all physicians, mental health professionals, medical facilities, or other health care providers by whom or at which you have been examined or treated in the past 10 years; and state as to each the dates of examination or treatment and the condition or injury for which you were examined or treated.

(Dkt. No. 42, Ex. No. 1 at 5.) However, in response to Interrogatory No. 11, Plaintiff provided no information regarding any of the four events. (Dkt. No. 42, Ex. No. 1 at 11–12.)

Additionally, in response to Interrogatory No. 10 of Defendant's 1st Set of Interrogatories Plaintiff itemized her past medical expenses, as follows:

| | |
|---|---|
| Sunshine City Emergency Physician | $ 612.00 |
| St. Petersburg General Hospital | $42,870.97 |
| Babat, Katz & Honeycutt, M.D.S., P.A. | $ 58.46 |
| Bay Sports Orthopedic Specialists | $20,550.00 |
| Tampa Bay Imaging | $ 1,850.00 |
| Back & Neck Pain Clinic | $ 2,355.00 |

TOTAL TO DATE AND CONTINUING: $68,897.23

(*Id.*, Ex. No. 1 at 11.) Notably, the medical providers identified as medical expenses in

1. Dr. Katz's first name could not be located in the record.

response to Interrogatory No. 10 were the only medical providers identified by Plaintiff in response to Interrogatory No. 11. (*Id.,* Ex. No. 1 at 11–12.) However, the medical expenses itemized by Plaintiff in response to Interrogatory No. 10 were materially inconsistent with the medical expenses itemized by Plaintiff on October 10, 2012, in her Supplemental Rule 26 Initial Disclosure. Specifically, in the Supplemental Rule 26 Initial Disclosure, Plaintiff listed the following additional medical providers, as bolded below:

| | |
|---|---|
| **Town & Country Hospital** | $ 15,811.47 |
| St. Petersburg General Hospital | $ 42,870.97 |
| Back & Neck Pain Clinic | $ 6,617.00 |
| Sunshine City Emergency Physician | $ 612.00 |
| **Pathology Associates** | $ 285.00 |
| **James G. Hankerson, M.D., P.A.** | $ 1,680.00 |
| **Sunstar Emergency Medical Services** | $ 600.80 |
| Bay Sports Orthopedic Specialists | $ 22,775.00 |
| **Ruffolo Hooper & Associates, MD** | $ 118.00 |
| Babat, Katz & Honeycutt, M.D.S., P.A. | $ 58.46 |
| Tampa Bay Imaging | $ 1,850.00 |
| **Gulf to Bay Anesthesiology** | $ 1,716.00 |
| **Medical Specialists of Tampa Bay** | $ 22,007.46 |
| TOTAL AND CONTINUING: | $117,002.16 |

(*Id.,* Ex. No. 2 at 6 (emphasis added).) As such, Plaintiff's claimed medical expenses were reduced from $117,002.16 to $68,897.23, and Plaintiff provided no explanation as to why she later reduced the total of her claimed medical expenses in her answers to the 1st Set of Interrogatories. Further, in the Supplemental Rule 26 Initial Disclosure, Plaintiff listed Dr. Wendell Bulmer, as a witness and identified Medical Specialists of Tampa Bay as a source of medical records related to the litigation. (*Id.,* Ex. No. 2 at 2, 5.) However, Plaintiff provided no explanation as to why the additional medical providers listed in her Supplemental Rule 26 Initial Disclosure, such as Dr. Bulmer, were not disclosed in response to the 1st Set of Interrogatories. Certainly, the inconsistencies between Plaintiff's Supplemental Rule 26 Initial Disclosure and her answers to the 1st Set of Interrogatories were an early sign that Plaintiff did not properly respond to the requested discovery.

The inadequacy of Plaintiff's discovery responses to the 1st Set of Interrogatories was clearly revealed during Plaintiff's deposition testimony on November 15, 2012. During the deposition, Plaintiff was asked to verify the completeness and accuracy of her responses to the 1st Set of Interrogatories. (Defendant's Hearing Ex. No. 4 at 42–43, 54–55.) Despite Plaintiff's initial testimony that her responses to the 1st Set of Interrogatories were complete and truthful, upon further examination, Plaintiff acknowledged that her responses to a number of the interrogatories were inadequate. (*See, generally, id.* at 55–146.) Plaintiff specifically agreed that her response to Interrogatory No. 11 was incomplete but explained that she had not provided further responsive information because she thought the interrogatory requested medical providers only related to her alleged injury in this case. (*Id.* at 75–79.) Eventually, after multiple questions about the validity of her response to Interrogatory No. 11, and an approximate 39–minute break to review her interrogatory answers, Plaintiff provided further responsive information to Interrogatory No. 11, specifically including some information related to two of the four events. (*Id.* at 79–80, 90–91, 99–103.) Namely, Plaintiff provided *limited* information regarding her October 2009 workers' compensation claim and very limited information about the fact that she was seen by Medical Specialists of Tampa Bay and had two MRIs at Rose Radiology, which the Court can only assume is related to her August 2011 fall and subsequent treatment by Dr. Bulmer. (*Id.*) Plaintiff initially denied having an MRI for the October 2009 workers' compensation claim, but, when confronted with records, Plaintiff recanted her denial and admitted to having an MRI. (*Id.* at 102, 103.) Plaintiff failed to specifically identify Dr. Bulmer, Dr. Levine, and Dr.

Katz as additional medical providers in response to Interrogatory No. 11, and Plaintiff failed to provide any specific information pertaining to Dr. Bulmer's August 2011 surgery on Plaintiff's left knee, Dr. Patel's September 25, 2008 examination and x-rays on Plaintiff left knee,[2] and Dr. Levine's and Dr. Katz's treatment in approximately October 2012. Rather, after receiving numerous opportunities during her deposition to supplement her answer to Interrogatory No. 11, Plaintiff stated that no other responsive medical providers existed. (*Id.* at 112.)

As demonstrated by Plaintiff's deposition testimony, her responses to the 1st Set of Interrogatories were incomplete and inadequate, thus requiring Plaintiff to supplement her discovery responses. Because Plaintiff did not supplement her responses as required by Fed.R.Civ.P. 26(e), Defendant served Plaintiff on December 13, 2012, with the 2nd Set of Interrogatories, which, amongst other things, requested that Plaintiff:

1. Identify all health care providers you failed to disclose in your previous answers to Defendant's September 18, 2012 interrogatories and provide for each your explanation for why you failed to disclose.

2. Identify all health care providers from whom you have received any medical, chiropractic, osteopathic and/or mental health attention October–December 2012 and January 2013.

(Dkt. No. 42, Ex. No. 5.) Thus, Defendant again requested the relevant information related to prior- and post-injury medical treatment and providers. Despite Defendant's efforts to allow Plaintiff another opportunity to appropriately supplement her discovery responses, Plaintiff did not timely provide *any* responsive discovery to Defendant's 2nd Set of Interrogatories. Accordingly, on February 1, 2013,[3] Defendant filed a Motion to Compel, requesting an order directing Plaintiff to respond to Defendant's 2nd Set of Interrogatories. (Dkt. No. 34.) On February 7, 2013, the Court scheduled a hearing on

Defendant's Motion to Compel for February 20, 2013. (Dkt. No. 38.) Eventually, on February 14, 2013, Plaintiff provided a response to Defendant's 2nd Set of Interrogatories. (Dkt. No. 42, Ex. No. 6.) Plaintiff's response was again inadequate in that it not only failed to provide all requested information about the four events and Drs. Patel, Bulmer, Levine, and Katz, but her response also failed to provide information about numerous other medical providers. (*See* Dkt. No. 42 at 5–6 (listing approximately 24 other medical providers identified by Defendant that should have been provided by Plaintiff in response to the requested discovery)).

During the hearing on Defendant's Motion to Compel, the parties announced that the issues raised by the Defendant's Motion to Compel were largely resolved. Given the parties representations, the Court entered an Order granting Defendant's Motion to Compel. (Dkt. No. 40.) The thrust of the Court's Order granting the Motion to Compel was to again reinforce Plaintiff's obligation to appropriately respond to the requested discovery. Despite the 1st and 2nd Set of Interrogatories, Plaintiff's deposition, the Motion to Compel, and the hearing before the Court on the Motion to Compel, Plaintiff did not provide appropriate supplemental discovery responses related to the four events, or to any other relevant events. In fact, at least up to the May 28, 2013 evidentiary hearing on the instant Motion, Plaintiff failed to provide any appropriate supplemental discovery. Plaintiff, in essence, does not dispute the inadequacy of her discovery responses. Instead, Plaintiff asserted, in both her Affidavit (Plaintiff's Hearing Ex. No. 1) and in her testimony at the May 28 hearing, that her failure to appropriately provide all requested discovery was not done with an intent to mislead Defendant or defraud the Court but rather was done based in part upon her misunderstanding about the requested discovery and in part because she was suffering from depression and anxiety during the time period when the discovery was requested.

---

2. Plaintiff specifically denied having any knee problems prior to February 23, 2011. (*Id.* at 129.)

3. As stated previously, the fact discovery deadline was scheduled for February 1, 2013. (Dkt. No. 26.)

### III. Legal Standard

 Defendant requests that the Court find that Plaintiff acted in bad faith and sanction Plaintiff by dismissing her case with prejudice. Defendant requests that the Court either dismiss the case by invoking the Court's inherent power or alternatively dismiss the case pursuant to Rule 37(b)(2) and (c)(1). As cited by Defendant during the May 28 hearing, *Qantum Communications Corp. v. Star Broadcasting, Inc.*, 473 F.Supp.2d 1249 (S.D.Fla.2007), concisely articulates the appropriate standard for the Court to utilize its inherent power to sanction a party. In pertinent part, *Qantum Communications* provides that:

[t]he key to unlocking a court's inherent power is a finding of bad faith. . . . Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order.

*Id.* at 1268 (internal quotation marks and citations omitted). Notably, bad faith can be predicated upon knowing or reckless conduct. *See id.* Although Defendant requests the Court rely upon its inherent power to sanction Plaintiff, the Court finds it unnecessary to do so because the Federal Rules of Civil Procedure sufficiently provide for the appropriate procedure and remedy to address the circumstances of this matter.

 Under Rule 26(e)(1) a party has an affirmative obligation to supplement its discovery responses. Specifically, Rule 26(e)(1) states,

A party who has responded to an interrogatory . . . must supplement or correct its disclosure or response[ ] . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . .

If a party fails to appropriately supplement its discovery responses then that party is subject to potential sanctions. Namely, pursuant to Rule 37(c):

If a party fails to provide information . . . as required by Rule 26(a) or (e), . . . the court . . .

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed.R.Civ.P. 37(c)(1)(A)-(C). Notably, the Court maintains broad authority in sanctioning a party pursuant to Rule 37(b)(2), which includes imposing Defendant's requested sanction of dismissal of the case. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir.1999) (*per curiam* ). Dismissal with prejudice is the most severe sanction, but such a sanction "may be appropriate when a plaintiff's recalcitrance is due to wilfulness, bad faith or fault." *See Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir.1993). A court should only dismiss a complaint as a last resort when there is a willful or bad faith failure to obey a discovery order and "less drastic sanctions would not ensure compliance with the court's orders." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir.1993). When considering whether dismissal is proper, a court must consider whether the noncomplying party has: (1) acted with flagrant bad faith, (2) to the detriment of the other party, (3) through the fault of the noncomplying party, and (4) where less drastic alternatives have already been tried. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). "Although [a] district court has wide latitude in framing orders and in penalizing failure to comply, that discretion has [constitutional] limits." *See Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171,1172 (5th Cir.1977).[4] Furthermore, dismissal as a sanction should not be

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ), the Eleventh Circuit adopted as precedent the decision of the former Fifth Circuit rendered prior to October 1, 1981.

imposed if a lesser sanction will do. *See Hashemi v. Campaigner Publ'ns, Inc.*, 737 F.2d 1538, 1538–39 (11th Cir.1984). Here, the Court finds that a lesser sanction will do.

## IV. Discussion

■ The record in this matter overwhelmingly demonstrates that Defendant repeatedly requested relevant discovery pertaining to any injuries and any medical providers who Plaintiff treated with prior to and subsequent to the alleged injury in this case. Despite Defendant's repeated requests, Plaintiff consistently withheld from Defendant a full accounting of pre-existing medical conditions, prior injuries or incidents, and prior- and post-incident medical treatment, accident(s), and injuries. Plaintiff's conduct, or lack thereof, clearly violates her affirmative obligation under Rule 26(e) to timely supplement her discovery responses. Notably, Plaintiff did not simply fail to properly supplement her discovery responses. Rather, Plaintiff received ample and specific notice that her discovery responses were incomplete and inadequate, Plaintiff then received multiple opportunities to properly supplement the record, and, yet, Plaintiff failed to appropriately supplement her discovery responses. Plaintiff's conduct demonstrates a clear abuse of the discovery process and warrants appropriate sanctions.

Plaintiff offers two explanations for her dilatory conduct; namely, she was suffering from depression and anxiety and she misunderstood the interrogatories. As to Plaintiff's depression and anxiety, while the Court is sympathetic to Plaintiff's mental health difficulties, Plaintiff's mental health does not excuse Plaintiff's failure to provide the appropriate discovery responses. As noted by Defendant during the May 28 hearing, Plaintiff was being treated and properly medicated for her depression and anxiety during the

relevant time periods. More importantly, Plaintiff's depression and anxiety simply cannot justify Plaintiff's failure to provide any information about medical providers, such as Dr. Levine and Dr. Katz, who were medical providers she treated with during or in close temporal proximity to the requested discovery. Plaintiff may have been suffering from anxiety and depression when she was required to respond to the requested discovery, but Plaintiff failed to establish how her anxiety and depression could have impacted her memory in such a way that she failed to include in her discovery responses information about medical providers that she treated with for her left knee during the time period of the requested discovery.

As to the interrogatories, Plaintiff claims that she thought Interrogatory No. 11 of the 1st Set of Interrogatories only requested that she divulge information regarding medical providers for the alleged injury at issue in this case. Plaintiff's position regarding Interrogatory No. 11 is difficult to understand since the interrogatory requested "*all* physicians, mental health professionals, medical facilities, or other health care providers by whom or at which you have been examined or treated *in the past 10 years ....*" (Dkt. No. 42, Ex. No. 1 at 5 (emphasis added).) Further, Interrogatory No. 11 also requested that Plaintiff state the dates of examination and the condition or injury for which Plaintiff was treated.[5] (*Id.*) The plain language of Interrogatory No. 11 requesting information about *all* medical providers within the past ten years dictates that the question was requesting more information beyond Plaintiff's alleged injury in this case. Thus, it is difficult to accept as credible Plaintiff's testimony that she misunderstood Interrogatory No. 11.[6] However, even giving Plaintiff the benefit of the doubt that she initially misunderstood Interrogatory No. 11, her explanation

---

**5.** Notably, Plaintiff never provided in any response the dates of examination or treatment and the condition or injury for which she was examined or treated.

**6.** In this regard, it is also inexplicable why Plaintiff then failed to identify Dr. Bulmer in her responses to Interrogatory No. 11 because, during her May 28 testimony, Plaintiff claimed that she believed that Dr. Bulmer was treating her for

the injury as alleged in this case. Plaintiff testified that she disputed Dr. Bulmer's opinion, as detailed in his notes, that Plaintiff suffered a new injury to her left knee. However, when asked why she did not identify Dr. Bulmer as a medical provider in her discovery responses if she believed he was treating her for the injury at issue in this case, Plaintiff only replied, "I don't know."

does not illustrate why, after having been cross-examined during her deposition about her interrogatory responses, she still failed to later supplement her response to Interrogatory No. 11. Significantly, Plaintiff was informed during her deposition that Interrogatory No. 11 was not just limited to the alleged injury in this case, and Plaintiff agreed that her response to Interrogatory No. 11 was not true and correct. (Defendant's Hearing Ex. No. 4 at 78–79.) In fact, throughout Plaintiff's deposition, she was continually put on notice that a number of her interrogatory responses were incomplete. Despite these revelations during her deposition, Plaintiff still did not subsequently supplement her discovery responses.

Although not required to do so, after Plaintiff's deposition, Defendant served Plaintiff with the 2nd Set of Interrogatories. Certainly, in light of the 2nd Set of Interrogatories and the revelations during her deposition, Plaintiff should have had no misunderstanding regarding the discovery requests. However, not only did Plaintiff fail to affirmatively supplement the record as she was required to do, Plaintiff inexplicably failed to timely respond to the 2nd Set of Interrogatories. Defendant then filed its Motion to Compel. Not until after the Court scheduled a hearing on the Motion to Compel did Plaintiff provide any discovery responses to the 2nd Set of Interrogatories. Surprisingly, the responses provided by Plaintiff were still incomplete and inadequate. As the record demonstrates, despite Defendant's Motion to Compel, the Court's Order granting the Motion to Compel, and the instant Motion, Plaintiff never provided appropriate supplemental discovery responses.

Given this record, Defendant's argument that Plaintiff acted with bad faith thereby warranting dismissal of the case is reasonable, and the Court has given Defendant's requested sanction serious consideration. However, after careful examination of the record, even though Plaintiff's conduct is inexcusable and unacceptable, dismissal of the case is unwarranted because less severe sanctions exist that can appropriately address Plaintiff's conduct. Although Defendant suggests that Plaintiff acted deliberately and intentionally with an intent to deceive Defendant and the Court, the Court finds that Plaintiff's conduct is more representative of a reckless disregard for the Federal Rules of Civil Procedure and the discovery requests and process than an intent to deceive. Plaintiff's reckless conduct is highlighted by the fact that Plaintiff testified during the May 28 hearing that she was under the impression that, if she provided any information about a subject matter, no matter how limited the information may be, she believed she met her discovery obligations. Further, looking at the four events highlighted by Defendant, Plaintiff, at some point in the discovery process, provided *some* information arguably related to three of the four events. For example, during her deposition, Plaintiff, without prompting, provided some information about the October 2009 workers' compensation claim. (Defendant's Hearing Ex. No. 4 at 79, 98.). Further, in her answers to the 2nd Set of Interrogatories (Dkt. No. 42, Ex. No. 6.), Plaintiff provided some information about her August 2011 fall, and, in her Supplemental Rule 26 Initial Disclosure, Plaintiff listed Dr. Bulmer as a witness in the case and identified Medical Specialists of Tampa Bay as a source of medical records related to the litigation. (Dkt. No. 42, Ex. No. 2 at 2, 5.) The September 25, 2008 examination of Plaintiff by Dr. Patel, which involved X-rays of Plaintiff's left knee, is the only event about which Plaintiff failed to provide any information. As to this event, the Court accepts as credible Plaintiff's testimony that she did not recall that examination. Thus, although Plaintiff clearly failed to conduct herself appropriately during the discovery process, it appears that Plaintiff's conduct was not done with the intent to mislead or deceive the Defendant or Court purposefully. Rather, Plaintiff acted with reckless disregard for the Federal Rules of Civil Procedure and the discovery process. Although reckless bad faith conduct can be sanctioned by a dismissal of the case, the Court finds that, given the circumstances presented here, where Plaintiff's conduct does not appear to have been done knowingly, sanctions less severe than dismissal of the case are warranted.

In considering the appropriate sanctions to impose, the Court is mindful that Defendant expended unnecessary time and resources to obtain the requested discovery not provided by Plaintiff. Given Defendant's extra effort and expenses, the most appropriate sanction is to require Plaintiff to pay all of Defendant's expenses and attorney's fees associated with Plaintiff's failure to provide the appropriate discovery. Further, to ensure that the payment of the fees and expenses is not a meaningless sanction lost in the litigation of the case between the parties, the case shall not proceed any further until full payment of the fees and expenses is made by Plaintiff to Defendant.

Aside from Plaintiff's conduct, the Court must also note the failures of Plaintiff's attorney, James Curtis, Esq. Where the record establishes that Plaintiff conducted herself with reckless disregard for the Rules and discovery process, it also establishes that Mr. Curtis pursued this case recklessly with little attention to detail. For example, although not significant, it is telling that, when responding to discovery, Mr. Curtis cited the Florida Rules of Civil Procedure rather than the Federal Rules of Civil Procedure. (*See, e.g.,* Dkt. No. 42, Ex. No. 6.) Though this is likely reflective of the use of form documents in responding to discovery, it is also indicative of Mr. Curtis's attention to the case. More importantly, the record indicates that Mr. Curtis did not review Plaintiff's responses to the 1st and 2nd Sets of Interrogatories in conjunction with Plaintiff's Rule 26 disclosures. Had he done so, Mr. Curtis would have realized and been able to explain the reduction of the claimed medical expenses and would have recognized the discrepancy in Plaintiff's interrogatory answers by failing to list, at a minimum, Dr. Bulmer as a medical provider. Additionally, having attended Plaintiff's deposition, Mr. Curtis should have recognized that Plaintiff was required to supplement her discovery responses under Rule 26(e)(1). Certainly, it is mystifying why Mr. Curtis did not ensure that Plaintiff timely responded to the 2nd Set of Interrogatories. Even more concerning is the fact that, after Defendant's Motion to Compel was filed, Mr. Curtis never filed a response to Defendant's Motion to Compel.

Moreover, Mr. Curtis failed to make genuine efforts to mitigate any potential harm caused by Plaintiff's failure to appropriately respond to the discovery, as demonstrated by Mr. Curtis's preparation for the sanctions hearing on May 28, 2013. Notably, it was not until after the hearing that Mr. Curtis appropriately reviewed his file and determined that Dr. Bulmer was listed in Plaintiff's Rule 26 disclosures. (*See* Dkt. No. 77, letter by Mr. Curtis stating that "[f]ollowing the hearing, I returned to my office and conducted another thorough review of our file. My review revealed that ... Dr. Bulmer and Medical Specialists of Tampa Bay were disclosed to Defendant ... in Plaintiff's Rule 26 Initial Disclosure.") In light of the Defendant's detailed motion for sanctions, and the significance of the May 28, 2013 evidentiary hearing, it is simply difficult to understand how Mr. Curtis did not know prior to the hearing that Dr. Bulmer had been previously disclosed by Plaintiff. Although Plaintiff is ultimately responsible and due to be sanctioned accordingly for her failure to provide proper discovery responses, given the record, which demonstrates repeated failures on the part of Mr. Curtis to prevent or mitigate such discovery violations, Mr. Curtis must show cause as to why he should also not be sanctioned.

## V. Conclusion

For the foregoing reasons, it is hereby **ORDERED:**

1. Defendant's Motion to Impose Sanctions on Plaintiff for Committing Fraud on the Court and Discovery Violations (Dkt. No. 42) is **GRANTED;**

2. Plaintiff is directed to ensure she has appropriately supplemented all of her discovery responses in this case no later than twenty (20) days from the date of this Order;

3. Defendant may conduct an additional deposition of Plaintiff to cover any information which was not known to Defendant at Plaintiff's first deposition;

4. Pursuant to Rule 37(c)(1)(A), Plaintiff shall pay to Defendant all expenses and attorney's fees related to: (1) Defendant seeking information not provided by Plaintiff in

her discovery responses to the 1st and 2nd Set of Interrogatories, (2) Defendant pursuing the Motion to Compel (Dkt. No. 34), (3) Defendant pursuing the instant Motion to Impose Sanctions (Dkt. No. 42), and (4) Plaintiff's additional deposition;

5. Pursuant to Rule 37(b)(2)(A)(iv), the pre-trial conference and trial in this matter shall be stayed until full payment is made by Plaintiff to Defendant;

6. The parties are directed to appear before the undersigned on October 11, 2013, at 8:30 a.m., in Tampa, Courtroom 10A, during which Defendant shall be prepared to provide an accounting of all fees and expenses due under this Order; [7] and

7. Attorney James S. Curtis is directed to appear before the undersigned on November 25, 2013, at 10:00 a.m., to show cause as to why he should not be sanctioned under Rule 37(b)(2)(C), 28 U.S.C. § 1927, or Rule 11, to pay a portion of Defendant's fees and expenses, as well as to participate in a total of five hours of continuing legal education on the Federal Rules of Civil Procedure.

**7.** The Court will also address the pending Motion to Withdraw (Dkt. No. 87) filed by Plaintiff's attorney.